Let's go ahead and begin. The first case is number 20-3136, Murray v. Noeth. Mr. Frost? Thank you. Good morning, Your Honor. Good morning, Justice Nardini, Justice Sack, Ms. Danczyk. May it please the court. In jury selection, any species of discrimination is wrong and it's properly condemned, whether it be on race, whether it be on religion, any species is wrong and it's condemned. And we, as attorneys and judges, trial judges, must always be vigilant to eliminate it, to prevent it when possible. But in our vigilance, we have to be very careful. We have to be on guard that we're not seeing the boogeyman around every corner, around every question that's posed to a juror. I commend Judge Herrick, the trial judge in this matter. I commend ADA-GLARNO for their vigilance, but I think they made the error of seeing discrimination where it wasn't. Judge Herrick, in his vigilance, was hasty, and that was the problem. His hasty... Counsel, can I ask you, why is your claim not foreclosed by the Supreme Court's decision in Rivera? Fair question, Judge. Under Justice Ginsburg's decision in Rivera, it would be, were it not for the alteration of the Batson inquiry. In other words, had there not been a compression, even if Mr. Murray were erroneously denied his peremptory challenge, I agree with you, this relief request, it would be foreclosed. So let me ask you more specifically. It seems to me that you're suggesting that the type of error that resulted in, in your view, an erroneous ruling on the peremptory, that the type of ruling allows you to distinguish the case from Rivera. But I didn't read Rivera as based on the type of error, so much as the absence of any underlying right to be vindicated, no matter what the error was in how or why the district court erroneously ruled on the peremptory. I thought Rivera says that the defendant has a right to come in and claim a Sixth Amendment violation, which is I didn't get a fair and impartial jury. And that's not the kind of claim that's implicated by an erroneous ruling on a peremptory like this in reverse Batson. Why is that not knock you out of the park? I think it's more than just the type of error. I think it is the procedure that was utilized. In other words, I'm trying to get to that point that you're talking about the procedure that utilized, but a procedure is utilized to vindicate a right. Correct. And I thought Rivera says you defendant don't have a right here. That's cognizable. So let me rephrase my question. What is the underlying right that is can be invoked by your client that's been violated? Not the procedure, but the procedure designed to protect what right? Well, the right is a due process one. It's what this court spoke of in the Jordan decision. The defendant's due process right is inadequately protected. When your process to what? What is what is due process to what? To proper ruling on his peremptory, because the Supreme Court and Rivera said that's not a thing. Agreed. Agreed on that. So due process to what? To equal protection, just as as all parties, just as jurors have a right to their equal protection and being selected on a non-discriminatory basis and being. And just as the prosecution has that right, the defense has that right. Is it possible that the jurors here have such a right? But of course, they haven't asserted it, that it's their right. That's that may be an issue, but they haven't asserted it. They're they're equal protection. Agreed. I don't think that they have a vehicle to do that, Judge Sack. I think anyone who to do that relies on the court system on Judge Herrick and well, on trial counsel as well. So if if you can invoke an equal protection, right? I don't know who's I assume you're clients. Correct. Why is Rivera not not foreclosure argument? Why would Rivera not have equally been able to invoke such a right? But he wasn't allowed to by the Supreme Court. How are you different? Different because of the modification of the Batson proceeding, Judge. No, but they're saying you didn't have that right at all in Rivera. I'm sorry, I'm someone else spoken. I missed the beginning part of your question, Judge. Was that maybe Judge Sack was trying to go ahead. Please, please. I guess I'm still not grasping. My understanding of Perquette is it's the mechanism by which the Supreme Court has said, this is the way we vindicate term rights. But in Rivera, I thought the Supreme Court said, when you have a reverse Batson challenge to peremptory, the defendant has no underlying right. So I don't see why it matters whether you comply with Perquette. You don't comply. I mean, that's a whole debate about whether that even matters or it's harmless. But I don't even understand what is the purported right that the defendant possesses here. It would be an equal protection right. And the Justice Ginsburg had the opportunity to reverse or undermine, undercut Perquette and chose not to. So if Perquette means anything, then it means that we must follow the proper Batson procedures. If it doesn't, I believe it would be the Supreme Court that needs to eviscerate Perquette. If it means anything. Perquette came up in a completely different context, right, where the Eighth Circuit had faulted the government. And the Supreme Court said, no, no, you don't have to worry about that. You know, you can't, you, the Eighth Circuit can't impose this new procedure. But that's very different from saying that there's a, Perquette never recognized that there was sort of a right that could be invoked by the defendant independently, right? Agreed. So Perquette may be the policy, the mechanism that we all need to follow. But the question is when Perquette is not followed under reverse Batson, is a defendant a person who's in a position to raise that as a violation of his own rights? And that is not a question that Perquette answered. I agree with that as well. Of course, there's no one else that could raise it other than the defendant. Well, sometimes that's the case, right? True enough. I can see my time is nearly completed. So unless any of you justices have another question for me, I'll yield the rest of my time. We just to point out that we're not yet justices. My apologies. No, not in the contrary. Well, fingers crossed, Your Honor. Thank you. We've reserved a couple of minutes for rebuttal. We'll hear from Ms. Danzig. Ms. Danzig, can you hear us? We can't see or hear you. No. Okay. Ms. Danzig? We have video, but not audio. I think you're on mute. Yes. These are the joys of technology. Maybe the space bar? There we go. We can't hear you. We still can't hear you. It's not showing mute, but maybe it's a volume issue. We can't hear you. Ms. Danzig, if you could please remove your headphones, maybe that will make your microphone work. Can you hear us? Did you hear that, Ms. Danzig? If you try removing your headset, sometimes that's worked. Sometimes there's a reason for the train ride down to New York, I suppose. Can we send a chat message, perhaps, through the courtroom deputy suggesting that Ms. Danzig remove her headset? Yes, Judge, I'm actually chatting with her right now. Okay, great. Okay. Maybe Ms. Danzig could call in on the telephone number. At least we can hear the audio that way. I'm writing that to her, Judge, suggesting. Okay. Oh, okay. Okay. Hello. We can hear you. Can you hear us? Yes, finally. I'm terribly sorry, Your Honors. I've always been able to speak, I think, but I've did not hear any of Mr. Frost's argument. But I am prepared to proceed with my own, if the Court will permit me to do so. Yes, that's fine. If you can hear us, we can proceed. I was just now able to reestablish my audio. Thank you for your indulgence, Your Honor. I'm very sorry about this. May it please the Court, I'm Jody Danzig from the Attorney General's Appeal. Your Honor, petitioner's claims are not federal constitutional claims for which habeas relief is available. And in any event, those claims were reasonably rejected as meritless by the state courts. For those two reasons, this Court should affirm the denial of the writ. The Supreme Court has repeatedly held that a defendant's allegation that his does not state a federal constitutional claim, and the Court has never made an exception for the claim that petitioner is asserting here, that the trial court in reviewing his peremptory strikes employed a modified Batson procedure. Indeed, there would be no basis for holding that such an allegation states a federal constitutional claim because a defendant's interest in the procedure for adjudicating his own strikes does not arise from any constitutional interest in having a jury selection that is free from discrimination. It simply arises from his interest in exercising his state-created peremptory strikes. For that reason, petitioner's claims are simply not cognizable. For that reason alone, this Court should affirm the denial of the writ. But in any event, to the extent that the classic three-step Batson inquiry was required in this and his respondent acknowledges, that inquiry was not ideal, it was not textbook, but it got the job done. And petitioner argues that it didn't. He argues to the contrary because we submit he misunderstands or he's misinterpreting some language used by the Court towards the end of the Batson inquiry. And I'm going to quote that language from page 107 in the appendix, and that is also page 312 of the trial transcript, when the Court at the end of the Batson inquiry said, I see no gender-neutral reason for jurors 5 and 17. Now, petitioner reads that language and interprets it to mean something that it really doesn't. According to petitioner, that language meant that the Court found that counsel's explanations for striking the two jurors were not gender-neutral. And what the Court did at that point was simply prematurely terminate the analysis, the inquiry at stage 3 to make a determination as to whether there was pretext. But clearly, that's not what happened. Because the explanations provided by counsel for striking jurors 5 and 17 were so patently, so transparently gender-neutral, we don't dispute that, that the Court had to mean something else. And clearly, as the appellate division found, what the Court meant was not that the explanations provided by counsel were not gender-neutral, but rather that the gender-neutral explanations weren't believable. They were pretexts for purposeful discrimination. That's what the Court meant. And again, the Court didn't say this explicitly, but as the appellate division held, the finding of pretext at stage 3 was inferable from the record. And that holding, that ruling by the appellate division was absolutely reasonable based on the record here. You're saying that steps 2 and 3 were essentially blended, perhaps unfortunately, blended by the Court, but followed. The substance of 2 and 3 were followed, even though perhaps the form of separating them out was not. That is exactly what I'm saying, Judge Sack. I mean, as we've fully acknowledged, and as the appellate division acknowledged, this was not a textbook example of a Batson inquiry. But the Court did conduct the steps 2 and step 3, conducted step 2 by asking the defense counsel to provide nothing more than gender-neutral explanations for the two strikes. It did not ask counsel to provide persuasive or even plausible explanations as to why the jurors could not be impartial. And then it moved on to step 3 by reviewing the complete record, by listening to arguments from both sides, and by reaching a decision which was the correct one, given the record in this case, that counsel were engaging in purposeful discrimination based on gender. And the record clearly shows that they were. And the trial court's finding that they were in habeas is presumed correct, as a factual finding always is in habeas, and is entitled to a presumption of correctness, unless there is clear and convincing evidence to the contrary, which there clearly wasn't here. These counsel were so obviously trying to remove all male jurors from this panel. In Round 1 of the jury selection, counsel removed all seven males who, at that point, were remaining... How much does it matter whether we agree with his ruling, as you say, we should, that it was clearly right? Does it matter whether it was clearly right? Well, what matters is that the petitioner hasn't put forth any clear and convincing evidence to the contrary. That is the standard here. This was a factual finding by the Court that there was gender-based discrimination. And I haven't heard any evidence to the contrary, much less clear and convincing evidence that counsel was doing anything other than trying to remove men from this panel, for no other reason than because they were men. Counsel, for whatever reason, felt that males would not be appropriate, would not be beneficial to the petitioner. And that's clearly what they were trying to do. And in fact, they came very close to doing it, because the final composition of the jury included only three men and nine women, and it would have been even more lopsided had counsel, had the prosecutor, rather, not raised the reverse bats in court. If we were to rule in your favor, wouldn't that create a circuit split with the seventh in Aki Kam? It seems to be in some tension with the position that you're advocating. I believe that, Judge Park, you're referring to the Seventh Circuit's decision in the Aki Kam v. Davis case. And I would say that it would not create a split, because the Aki Kam case was so extraordinary in its facts, and so utterly different from this case here. First of all, the Aki Kam case involved the death penalty. Well, but it seemed to suggest that there is a right to reverse bats in challenge. But the claim, it appears that way, I suppose, on its surface, but the claim in Aki Kam was so different from the claim alleged here. In this case, the claim was that the trial court erroneously disallowed discrete peremptory strikes. That's not what happened in Aki Kam. In Aki Kam, the allegation was that the bats in inquiry at every point was utterly altered, radically so, such that the defendant in that case was altogether denied his state right to peremptory strikes, period. That's not what happened in this case. In this case, the petitioner got everything that New York law allowed him to have. New York law allows you to have 20 peremptory strikes in this situation. It does not allow you to have... The premise of the Seventh Circuit's decision was that there was a constitutional right to the state-created peremptory challenges. That's underlying the reasoning. I grant you that it's a different circumstance, that the reasoning seems to rely on a different constitutional assumption. I would point out, Your Honor, that the court was careful to note that its ruling should not be applied beyond the facts of that particular case. Also, I would say that the Seventh Circuit's decision is not a clearly established holding of the United States Supreme Court. It's really not something that this court should be looking to in any event. The cases that this court should be looking to are Rivera v. Illinois and the other cases in which the Supreme Court has... I think that's a bit of an overstatement. I think we should be looking into the question as to whether we're creating a circuit split or not. Whatever we do, I think it does matter whether we're creating a circuit split. You're saying we're not. I think no, only because that case is so distinguishable from this one. I don't think that's a concern of this court. Like I said, the right at issue or the claim at issue in Akiquam was that the then-defendant, a later petitioner, had been completely denied any right to have peremptory strikes. He did not get what he was entitled to under state law. That seemed to be one of the bases for the holdings of that court. The court emphasized that he was entitled to under state law, and that's clearly not what happened here. In New York, a defendant is allowed a certain number of peremptory strikes, but he does not allow the peremptory strikes that he necessarily wants. He's just simply allowed to have them. In this case, the petitioner got all 20 peremptory strikes, even though two were disallowed. He received two compensatory strikes. He got everything that he was entitled to. I think even the Seventh Circuit would acknowledge that this case is very distinguishable from that one. If there are no further questions from the panel, the respondent will rest on his brief. Thank you, counsel. Mr. Frost, you preserve two minutes for rebuttal. Yes, thank you. Akiquam is an extreme case, and that helps easily define what the rule is. Akiquam, the Seventh Circuit was obviously well aware of the decisions in Rivera and Perquette and chose the route that it chose nonetheless, gave the decision that it gave. This court recognized that in the Brown decision. The appellee distorts what this court's holding was in Brown, saying that it prevents any right to the appellant because this is a reverse bassin. But that's not what this court said. This court, in fact, cited to Akiquam specifically about that issue, saying that Brown differed, and therefore the right was not available to the Brown defendant. But that's not the case here. That's precisely not the case here. The appellate division in Mr. Murray's case went through some gymnastics to say that Judge Herrick didn't say what he said. Instead, he said what is required under Batson. He didn't blend two and three. He may have conflated them slightly, but he actually went through all three steps. Well, it's clear from the transcript that he didn't do that. In fact, Judge Herrick started making his own objections without any objection from the inquiry. And then to say that Akiquam doesn't have any bearing here, I think, is a misstatement. And as you say, Judge Sack, it shows there would be a split in the circuits. So I agree with that. I have nothing else. And so I thank the panel for its time. Thank you both. We'll take the case under advisement. That's the only argument on the agenda. Course then to adjourn. Thank you. I'll pass for you. Thank you.